Steven N. Williams (SBN 175489)
**STEVEN WILLIAMS LAW, P.C.**
201 Spear Street, Suite 1100
San Francisco, CA 94105
Telephone: 415-697-1509
Fax: 415-230-5310
swilliams@stevenwilliamslaw.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **STEPHEN SANDERS**, | Case Nos.: 4:23-cv-04416-RFL; 4:23-cv-04432 |
| *Plaintiff,* | **CONSOLIDATED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| **BAY AREA AIR QUALITY MANAGEMENT DISTRICT,** | |
| *Defendant.* | |
| **TERRI LEVELS,,** | |
| *Plaintiff,* | |
| v. | |
| **BAY AREA AIR QUALITY MANAGEMENT DISTRICT,** | |
| *Defendant.* | |

**TABLE OF CONTENTS**

I.    NATURE OF THE ACTION .................................................................................... 1

II.    JURISDICTION AND VENUE ............................................................................... 3

III.    PARTIES .................................................................................................................. 3

IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES AND GOVERNMENT CLAIM
      REQUIREMENTS .................................................................................................. 4

V.    FACTS ..................................................................................................................... 5

      A.    Plaintiff Sanders ............................................................................................ 5

      B.    Plaintiff Levels ............................................................................................. 11

      C.    Discriminatory and Hostile Workplace Towards Minorities ................................. 14

      D.    Third-Party Consultant Investigation and Evaluation ............................................ 17

VI.    CAUSES OF ACTION ......................................................................................... 19

      A.    FIRST CAUSE OF ACTION BY STEPHEN SANDERS .................................. 19

      B.    SECOND CAUSE OF ACTION BY STEPHEN SANDERS ............................. 21

      C.    THIRD CAUSE OF ACTION BY STEPHEN SANDERS ................................. 22

      D.    FOURTH CAUSE OF ACTION BY STEPHEN SANDERS ............................. 22

      E.    FIFTH CAUSE OF ACTION BY STEPHEN SANDERS .................................. 23

      F.    SIXTH CAUSE OF ACTION BY TERRI LEVELS .......................................... 24

      G.    SEVENTH CAUSE OF ACTION BY TERRI LEVELS .................................... 25

      H.    EIGHTH CAUSE OF ACTION BY TERRI LEVELS ....................................... 26

      I.    NINTH CAUSE OF ACTION BY TERRI LEVELS .......................................... 27

      J.    TENTH CAUSE OF ACTION BY TERRI LEVELS .......................................... 27

VII.    DEMAND FOR JURY TRIAL .............................................................................. 28

VIII.    PRAYER FOR RELIEF ........................................................................................ 28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMES NOW Plaintiffs Stephen Sanders and Terri Levels (collectively "Plaintiffs") through this consolidated complaint alleging the following causes of action against Defendant Bay Area Air Quality Management District ("BAAQMD"  or "Defendant"), demanding a jury trial, and seeking compensation and remedies as set forth below.

## I.    NATURE OF THE ACTION

1.    These actions arise  under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 (e), *et seq.* ("Title VII") and the California Fair Employment and Housing Act, California Government Code §§ 12940 *et seq.*, ("FEHA") based upon Defendant's discrimination against Plaintiffs. In Sanders case, this discrimination was based on sexual orientation and gender identity. In Levels case, this discrimination was based on race, age and sex. Plaintiffs also allege claims of hostile work environment, failure to take reasonable steps to prevent discrimination, retaliation for opposing unlawful employment practices pursuant to FEHA, and retaliation pursuant to Title VII of the Civil Rights Act.

2.    This consolidated complaint is filed pursuant to the Court's order of December 10, 2024 [ECF 99].

3.    BAAQMD is a hostile and discriminatory "old boys club" where heterosexual, white men are in charge, while others are deprived of equal opportunities and treatment – in violation of both state and federal law. Defendant BAAQMD masks itself under the guise of inclusivity and diversity, when in reality, it is anything but. Defendant BAAQMD has created such a pervasively hostile and systemically discriminatory and racist workplace, that both current and former employees have suffered health issues due to chronic stress (*i.e.,* Plaintiff Sanders taking a six-month medical leave of absence due to mental and physical health issues, an employee suffering a miscarriage due to the stress suffered at BAAQMD, etc.). Executives at the highest level openly discriminate against non-heterosexual, non-white men. Some examples include enforcing gendered dress codes, mocking an African-American woman's hair, calling an African-American woman a "black b*****," stating of employees of  Asian descent that the Defendant should "[just] lock them in a room until they do their work," calling a woman a "stuffed sausage," commenting on women's breasts and referring to them as "torpedo

t******." These are a few of many examples, as described in more detail below. Such behavior is not only tolerated – it is rewarded by Defendant.

4.     Plaintiff Sanders alleges that they were terminated from employment with Defendant BAAQMD on account of Plaintiff Sanders's opposition to discriminatory practices. During the course of Plaintiff Sanders's employment, they were subjected to unlawful discrimination because of their sexual orientation, gender identity, sex and disability, and suffered retaliation for making complaints with Defendant regarding the unlawful discriminatory practices. Over their entire tenure at BAAQMD, Plaintiff Sanders experienced and observed a heterosexual, white male-dominated workplace, permeated with degrading, marginalizing, discriminatory and sexually harassing conduct towards people of color, women, and LGBTQIA+ individuals. When Plaintiff Sanders tried to push back against these illicit policies, the result was discipline and termination even though the stated reasons were no different from how the Defendant conducted itself both before and after Plaintiff Sanders was terminated.

5.     Throughout Plaintiff Sanders's employment, they were repeatedly faced with discriminatory treatment. When Plaintiff Sanders witnessed such injustice within the agency, Plaintiff Sanders advocated for themself and others out of a commitment to the betterment of the BAAQMD, with the hope that they could be a vehicle for change so that the BAAQMD would be compliant with state and federal employment law. After raising concerns with the upper management of BAAQMD, Plaintiff Sanders was constructively demoted, reprimanded, unfairly treated, and terminated in retaliation. Plaintiff Sanders's battle to make BAAQMD a safe and just place to work came at the ultimate cost to them – their employment and mental health.

6.     By way of this action, Plaintiff Sanders seeks to recover damages for adverse employment actions based on complaints that their employer violated the Government Code and specifically the provisions of the Fair Employment and Housing Act prohibiting discrimination based on sexual orientation, sex, gender identity, and retaliation.

7.     Plaintiff Levels alleges that she was terminated from employment with Defendant BAAQMD on account of Plaintiff Level's opposition to discriminatory practices. During the course of Plaintiff Level's employment, she was subjected to unlawful discrimination because of her race, sex,

gender and age, and suffered retaliation for making complaints with Defendant regarding the unlawful discriminatory practices. Over her entire tenure at BAAQMD, Plaintiff Levels experienced and observed a white, male-dominated workplace, permeated with degrading, marginalizing, discriminatory and sexually harassing conduct towards people of color, women, and LBGQIA+ individuals.

8.      Throughout Plaintiff Level's employment, she was repeatedly faced with discriminatory treatment and sexually explicit conduct directed at female employees. When Plaintiff Levels witnessed such injustice within the agency, Plaintiff Levels advocated for herself and others out of a commitment to the betterment of the District, with the hope that she could be a vehicle for change. After raising concerns with the upper management within BAAQMD, Plaintiff Levels was constructively demoted, reprimanded, unfairly treated, and terminated in retaliation. Plaintiff Level's battle to make BAAQMD a safe and just place to work for came at a high cost to her – her employment and mental health.

9.      By way of this action, Plaintiff Levels seeks to recover damages for the adverse employment actions based on complaints that her employer violated the Government Code and specifically the provisions of the Fair Employment and Housing Act prohibiting discrimination based on race, sex, gender, age, and retaliation.

## II.    **JURISDICTION AND VENUE**

10.     This Court has jurisdiction over this action on the basis of federal question jurisdiction under 28 U.S.C. § 1331 because some of the claims arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 (e), *et seq.* Venue is appropriate in this Court as the defendant's headquarters are in San Francisco, California, within the Northern District, and because the events and transactions at issue took place in this judicial district.  Further, venue and jurisdiction are appropriate in this Court over this Defendant as Defendant removed these cases from the Superior Court of the State of California for the City and County of San Francisco to this Court.

## III.   **PARTIES**

11.     Plaintiff Stephen Sanders ("Plaintiff") is, and at all times herein mentioned was, an openly LGBTQIA+ individual, adult person who is a resident of the State of California, and at all times relevant to this Consolidated Complaint worked for Bay Area Air Quality Management District.

12.    Plaintiff Terri Levels ("Plaintiff") is, and at all times herein mentioned was, an African-American female adult person who is a resident of the State of California, and at all times relevant to this Consolidated Complaint worked for Bay Area Air Quality Management District in the County of San Francisco, State of California.

13.    Defendant Bay Area Air Quality Management District is a public agency that regulates the stationary sources of air pollution in the nine counties of California's San Francisco Bay Area: Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, Santa Clara, Southwestern Solano and Southern Sonoma counties. Bay Area Air Quality Management District is an employer headquartered in San Francisco, California. Defendant was the employer of Plaintiffs at all times relevant herein.

**IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES AND GOVERNMENT CLAIM REQUIREMENTS**

14.    All conditions precedent to the commencement of this lawsuit have been fulfilled. Prior to the filing of this action, Plaintiff Sanders timely filed a complaint alleging discrimination against BAAQMD with the California Civil Rights Department ("CRD") on June 21, 2023. A true and correct copy of those charges is attached to this complaint, marked **Exhibit A**, and incorporated by this reference as though fully set forth. Those charges were timely filed under Gov. Code, § 12960. On June 26, 2023, Plaintiff Sanders obtained a Right to Sue letter from CRD. A true and correct copy of the Right to Sue letter from CRD is attached to this complaint, marked **Exhibit B**, and incorporated by this reference as though fully set forth. Prior to the filing of this action, Plaintiff Levels timely filed a complaint alleging discrimination against BAAQMD with the California Civil Rights Department ("CRD") on June 28, 2023. A true and correct copy of those charges is attached to this complaint, marked **Exhibit C**, and incorporated by this reference as though fully set forth. Those charges were timely filed under Gov. Code, § 12960. On June 29, 2023, Plaintiff Levels obtained a Right to Sue letter from CRD. A true and correct copy of the Right to Sue Letter from the CRD is attached to this complaint, marked **Exhibit D**, and incorporated by this reference as though fully set forth.

V.    **FACTS**

A.    **Plaintiff Sanders**

15.    Plaintiff Sanders repeats and realleges the allegations set forth in all previous paragraphs as if fully set forth herein.

16.    Plaintiff Sanders is an LGBTQIA+ individual and is a member of a protected class.

17.    Plaintiff Sanders was hired and employed by Defendant on or about November 6, 2006 through January 14, 2023. At all relevant times, Plaintiff Sanders worked at the BAAQMD office located at 375 Beale Street, San Francisco, CA.

18.    Plaintiff Sanders was a Human Resources Analyst I at BAAQMD from their date of hire until March 28, 2011. Plaintiff Sanders was then selected and served as Acting Manager of Executive Operations from March 28, 2011 to September 5, 2011. Thereafter, Plaintiff Sanders was promoted to Human Resources Analyst II and was later again promoted and served as Manager of Executive Operations until June 20, 2013. Subsequently, Plaintiff Sanders was selected to and served as the permanent Manager of Executive Operations until on or about October 15, 2014.

19.    Plaintiff Sanders was promoted and became the Director of Administrative Services Division and held such position until their most recent appointment as a Deputy Air Pollution Control Officer ("DAPCO") and working title of Chief Administrative Officer ("CAO"), on or about November 28, 2017.

20.    As DAPCO/CAO, Plaintiff Sanders's duties included overseeing the Human Resources Office, the Executive Operations Office, the Administrative Services Division and the Information Systems Office.

21.    During Plaintiff Sanders's tenure at BAAQMD, they were an exemplary employee with no disciplinary actions against them.

22.    For almost the entirety of Plaintiff Sanders's tenure at BAAQMD, Plaintiff Sanders endured discrimination by several executive-level colleagues, who intentionally harassed and discriminated against Plaintiff Sanders, as discussed in greater detail below.

23.    Plaintiff Sanders notified Defendant of the toxic, heteronormative work environment at BAAQMD on numerous occasions, where anyone that was not a white, heterosexual male was greatly

disadvantaged and, more often than not, discriminated against. At the same time, white heterosexual men and white women routinely advanced through the ranks of the organization and were compensated accordingly. Defendant took no action regarding Plaintiff Sanderss concerns and complaints, and continuously rewarded poor behavior.

24.     On or about October 2020, Plaintiff Sanders's doctors put them on a medical leave of absence for mental and related physical issues caused by the extreme stress and anxiety at BAAQMD. Plaintiff Sanders originally took a three-month medical leave of absence, which was then extended an additional three months by Plaintiff's doctor.

25.     Prior to Plaintiff Sanderss medical leave of absence, Plaintiff Sanders met with their then subordinate employee and Information Systems Director, John Chiladakis to provide him with an overview of outstanding issues that he needed to follow up on and manage during Plaintiff's leave, as Chiladakis was to serve as Acting DAPCO/CAO during Plaintiff Sanders's medical leave of absence.

26.     In December 2020, Plaintiff Sanders's doctor extended their medical leave for an additional three months due to ongoing mental and physical issues that would not resolve.

27.     On or about March 5, 2021, Plaintiff Sanders met with Executive Officer Jack Broadbent to discuss their return to work, scheduled for April 5, 2021. Plaintiff Sanders prepared a list of items that would help them return to work safely in preparation for this meeting. Rather than focusing on Plaintiff Sanders's return to work, Mr. Broadbent instead tried to pressure Plaintiff Sanders into writing a formal complaint that would implicate, among other people, Brian Bunger (then counsel to Defendant) and Mr. Broadbent himself. The complaint that Mr. Broadbent was pressuring Plaintiff Sanders into writing would implicate those described above, but not all who were involved in the discriminatory and harassing conduct directed at Plaintiff Sanders.

28.     Jack Broadbent informed Plaintiff Sanders that after the Board of Directors learned of Plaintiff Sanders's medical leave of absence, it wanted to use Plaintiff Sanders's medical issues as a reason to fire certain executives at BAAQMD, including then counsel Brian Bunger, as well as DAPCO Jeffrey McKay.

29.     Plaintiff Sanders expressed their discomfort with writing a formal complaint at the insistence of Jack Broadbent. When Plaintiff Sanders stated they would think about writing a

complaint, Jack Broadbent told them to stay out of the office for longer while he "cleaned up the toxicity" of the office because the office environment was "more toxic than ever before," by terminating Brian Bunger, Jeffrey McKay, and others. Jack Broadbent's direction to Plaintiff Sanders to stay out of the office longer came from John Bauters (Mr. Bauters informed Plaintiff Sanders of this later in time). Jack Broadbent promised Plaintiff Sanders that Plaintiff Sanders would be promoted to Deputy Executive Officer after Plaintiff Sanders wrote a complaint.

30.     Jack Broadbent asked Plaintiff Sanders if their doctors could write them a note to keep them out of BAAQMD for the reasons described above. Plaintiff Sanders stated that they would not ask their doctors to keep them out of work for political reasons, but stated that Defendant could place Plaintiff on Administrative Leave with pay if he wanted Plaintiff Sanders to stay out (a status the agency regularly uses to protect the integrity of investigations), to which he agreed.

31.     After much pressure from Jack Broadbent, Plaintiff Sanders wrote a formal complaint as insisted upon by Jack Broadbent. One day after writing the complaint, Mr. Chiladakis contacted Plaintiff Sanders to ask Plaintiff Sanders to "go easy on Damian Breen" in Plaintiff Sanders's complaint.

32.     Plaintiff Sanders was later asked by the investigator to supplement their previous written complaint with more specific details.

33.     On or about April 29, 2021 and May 5, 2021, Plaintiff Sanders met with investigator Nikki Hall, Managing Partner at Van Dermyden Makus Law Firm.

34.     On or about May 7, 2021, Plaintiff Sanders emailed Nikki Hall with a list of harassing behaviors they had been experiencing at BAAQMD, per her request.

35.     On or about June 30, 2021, Plaintiff Sanders met with Jack Broadbent, who, since Plaintiff Sanders's complaint had been filed, had tried convincing Plaintiff Sanders to become a contract employee. Plaintiff Sanders stated to Jack Broadbent that they did not believe that was a good idea because they would lose their benefits and job security. Mr. Broadbent told Plaintiff Sanders to consider it regardless. Notably, Plaintiff Sanders found out later that Mr. Broadbent told others that if Plaintiff Sanders became a contract employee, the investigation into their claims would end.

36.     On or about July 15, 2021, Jack Broadbent attempted to again pressure Plaintiff Sanders into becoming a contract employee. Plaintiff Sanders stated again that they were not comfortable with becoming a contract employee and wanted to ensure their job security at BAAQMD. Jack Broadbent responded by threatening that Plaintiff Sanders would then not be promoted, and instead would have to report to John Chiladakis, Plaintiff Sanders's subordinate, and that he would promote Mr. Chiladakis to a higher level deputy position if they did not become a contract employee. Plaintiff Sanders told Jack Broadbent that his conduct seemed retaliatory in nature to them. After the discussion, Jack Broadbent refused to speak to Plaintiff Sanders without an attorney present at all times.

37.     On or about July of 2021, Defendant's Counsel Brian Bunger retired suddenly and without prior indication of an intention to do so.

38.     On or about August 23, 2021, Plaintiff Sanders returned to work.

39.     On or about August 24, 2021, Plaintiff Sanders spoke with Santa Clara County Supervisor and then former Chair, Cindy Chavez. When Plaintiff Sanders called, Ms. Chavez's secretary referred to Plaintiff Sanders as a "whistleblower," which surprised Plaintiff. Plaintiff Sanders and Ms. Chavez discussed Plaintiff Sanders's written complaint and concerns regarding the discriminatory and toxic culture at BAAQMD.

40.     After Plaintiff Sanders's meeting with Cindy Chavez, the Board of Directors at BAAQMD cut off all communications with Plaintiff Sanders.

41.     On or about December 2021, the Board of Directors of BAAQMD ("Board of Directors" or "Board") authorized the execution of a contract between Defendant and a consulting company called Sjoberg Evanshenk Consulting, Inc. ("Consultant"). Defendant hired Consultant to perform a management audit of Defendant's operations in response to management's request for twenty-six (26) additional positions at BAAQMD, as a part of the fiscal year ending in the 2022 BAAQMD Budget Proposal ("Proposal").

42.     The Board of Directors directed Consultant to review and report back to the Board on the circumstances leading to ten of twenty-six newly budgeted positions being filled, despite the Board of Directors' decision and directive that Jack Broadbent should not proceed with doing so.

43.     Plaintiffs Sanders and Levels issued a detailed report to the Consultant and then Interim Executive Officer Alexander Crockett, concerning the newly budgeted positions being filled. The report that Plaintiffs Sanders and Levels issued was never referenced or included in Consultant's final audit report. Rather, George Skiles ("Skiles"), the person who conducted the audit with Consultant, finalized his report, which incorrectly stated that the Human Resources Department filled the new positions. Skiles' reasoning in his report was contrary to the facts, to staff's documentation and to his own understanding and conversations with Plaintiffs.

44.     After Skiles's audit report was issued, the Board of Directors directed Consultant to perform a "Performance Audit of Human Resources," one of the Divisions which Plaintiff Sanders and Levels oversaw. During the five-month audit, Skiles was often unavailable and unresponsive, despite having unhindered access to Plaintiffs. Skiles did not meet with Human Resources Department ("HR") staff during the HR audit, and spent only one day at BAAQMD's Headquarters during that time.

45.     Skiles' report of the audit made several findings that Plaintiffs Sanders and Levels and others believed were incorrect, biased, and/or incomplete. Plaintiffs Sanders and Levels informed Skiles and then newly hired Interim Executive Officer Sharon Landers of these inaccuracies.

46.     Plaintiff Sanders was the individual at BAAQMD with the most directly relevant experience in the public sector human resources field.

47.     On or about October 16, 2022, after business hours, Skiles produced a draft audit report to Plaintiffs Sanders and Levels. Skiles set a deadline of three business days for Plaintiffs Sanders and Levels to substantively respond to his report, and an additional four business days to confer regarding any disagreements they may have until the official response was finalized.

48.     Plaintiffs Sanders and Levels found many discrepancies in Skiles's report and promptly notified him of such. Plaintiffs Sanders and Levels worked with Skiles for several days to resolve the major issues they found in the report. After numerous meetings and discussions, Skiles informed Plaintiffs Sanders and Levels that the audit would include the corrections that Plaintiffs Sanders and Levels deemed necessary. When Skiles's audit report was produced, it did not include the necessary corrections.

49.     On or about October 18, 2022, Sharon Landers sent a draft of Skiles's audit report to the Board of Directors, Officers and District Counsel.

50.     On or about October 20, 2022, Plaintiffs Sanders and Levels notified Sharon Landers of the major issues in Skiles's report, as set forth above. Sharon Landers did not meet with Plaintiffs Sanders and Levels to discuss the issues in the report prior to a Board Meeting being held, in which the results were to be presented to the Board of Directors and the public at large. Rather, Sharon Landers continued to investigate the audit results with Board Member and Mayor of Emeryville Mr. John Bauters, Skiles, then Director of Information Systems and Services John Chiladakis ("Chiladakis"), and then Chief Counsel Alexander Crockett.

51.     On or about November 3, 2022, Sharon Landers met with Plaintiffs Sanders and Levels via Zoom Videoconference, along with Legal Assistant Nicholas Moore of the Renne Public Law Group and Terri Levels. During the video conference, Plaintiff Sanders and Levels were notified that they were being placed on administrative leave with pay because of the findings alleged in the Performance Audit of the Human Resources Department. Plaintiffs Sanders and Levels were further informed that they were to be "on call" during regular working hours, but to "not perform work unless so directed by [Sharon Landers] in writing." Plaintiffs Sanders and Levels were further directed to "not have any contact with District staff other than myself [Sharon Landers] or Alexander Crockett."

52.     Prior to the meeting, Plaintiffs Sanders and Levels received no notification from Sharon Landers regarding the purpose of the meeting, nor whether they had the right to representation at the meeting.

53.     Defendant's failure to inform Plaintiffs Sanders and Levels at the time they were summoned to the meeting for the purpose of being advised on an imminent disciplinary action is in direct violation of BAAQMD's Administrative Code, Division III, Section 4.6: Grievance Procedure. A true and correct copy of BAAQMD's Grievance Procedures are attached hereto as **Exhibit E**.

54.     On or about December 19, 2022, Plaintiff Sanders received a Notice of Intended Termination of Employment letter from Sharon Landers. A true and correct copy of the Notice of Intended Termination of Employment is attached hereto as **Exhibit F**.

55. On or about December 21, 2022, Plaintiff Sanders received four boxes at their mailing address which each contained a copy of the Notice of Intended Termination of Employment letter. The letter detailed numerous false accusations against Plaintiff Sanders, including that the reason for Plaintiff Sanders's termination was due to recommendations from an audit report, Defendant's approach to anti-bullying policy, dishonesty, Plaintiff Sanders's job performance and the like. All the stated reasons were pretextual.

56. On or about January 5, 2023, Plaintiff Sanders submitted a written grievance with Defendant, constituting a grievance pursuant to Division III, Section IV of the Administrative Code, relating to the decision to terminate Plaintiff Sanders's employment. The grievance detailed the discrimination and retaliatory conduct that Plaintiff Sanders suffered at the hands of Defendant.

57. Plaintiff Sanders appeared at a grievance meeting on January 9, 2023, with Sharon Landers, Carla Welch, a senior HR Consultant with the Renne Public Law Group, and Legal Assistant Nicholas Moore with the Renee Public Law Group.

58. On or about January 14, 2023, Plaintiff Sanders received a letter notifying them of their termination of employment effective immediately. The termination letter further indicated that Plaintiff's grievance was denied. A true and correct copy is attached hereto as **Exhibit G**.

**B.    Plaintiff Levels**

59. Plaintiff Levels repeats and realleges the allegations set forth in all previous paragraphs as if fully set forth herein.

60. Plaintiff Levels is an African-American female and is a member of a protected class.

61. Plaintiff Levels was hired and employed by Defendant on or about December 3, 2007 through April 14, 2023. At all relevant times, Plaintiff Levels worked at the BAAQMD office located at 375 Beale Street, San Francisco, CA.

62. Plaintiff Levels has dedicated the majority of her professional life to BAAQMD. Plaintiff Levels was first hired by Defendant as a Human Resources intern while finishing school in December of 2007. After showing her dedication and enthusiasm for the agency, Plaintiff Levels was offered and accepted a full-time position as an Administrative Secretary for Technical Services in 2008.

Plaintiff Levels excelled at her job, and was subsequently promoted to an assignment as Administrative Analyst in Strategic Incentives only a year later, in October of 2009.

63.     After working diligently, Plaintiff was again promoted to the position of Administrative Analyst in the Business Department in late 2012. Plaintiff thrived at her job and took an assignment as Human Resources Analyst and a subsequent full-time position in October 2015. Plaintiff remained passionate about her career at BAAQMD throughout her tenure. In July of 2018, Plaintiff took a position at Marin County as a Human Resources Manager, but quickly returned to BAAQMD in June of 2019 and was happy to be back at BAAQMD. Upon Plaintiff's return, she was promoted to Assistant Manager in Human Resources and was promoted to the highest position in the Department as Human Resources Officer in November of 2020, where she remained until her termination on April 14, 2023.

64.     Notably, Plaintiff was the first African American woman to hold the position of Human Resources Officer at a Director Level ("HRO") at BAAQMD. As HRO, Plaintiff managed the Human Resources Department support functions within the agency for approximately twenty-three months.

65.     Defendant's Human Resources Department performs a variety of distinct and specialized functions, including but not limited to candidate application screening and background checks; new employee orientation, employee training, and performance assessments; leave accounting; workplace discrimination complaints; workforce and succession planning; records management, including and reviewing reporting structures; and assistance with establishing new positions and new reporting structures.

66.     The Human Resources Department is responsible for ensuring BAAQMD, as an employer, adheres to a series of statutes that mandate specific benefits and rights for all employees. Such statutes include laws that strictly prohibit discrimination and guarantee the rights of employees related to compensation (wage and hour laws), health and retirement benefits, mandated leave benefits, and privacy laws, among others, as well as BAAQMD's Administrative Code and District policies and procedures.

67.     As a Director HRO, Plaintiff was in charge of overseeing all functions as described above, as well as ensuring that BAAQMD created and cultivated an inclusive and positive workplace for all employees.

68.    At all times throughout Plaintiff Level's employment, she performed her duties in an exemplary manner. Plaintiff Levels was never disciplined prior to Plaintiff Levels engaging in protected activity as described herein.

69.    Despite Plaintiff Levels's effort and dedication to create an inclusive and safe workplace environment, executives at BAAMQD refused to allow such a workplace.

70.    During the time that Plaintiff Sanders was on their medical leave of absence due to the stress, anxiety, and toxicity at BAAQMD, Plaintiff Levels  was to report to the then-acting CAO and Director of Information Systems and Services, John Chiladakis.

71.    While reporting to then-acting CAO, John Chiladakis, Plaintiff Levels voiced her concerns about working with Mr. Chiladakis to Jack Broadbent (as he displayed racist and sexist behavior) on numerous occasions. Jack Broadbent dismissed all of Plaintiff Level's concerns.

72.    Prior to receiving a Notice of Intended Termination, Plaintiff Levels inquired as to the status of her leave with Defendant. Unfortunately, Defendant's pattern of dismissive and discriminatory conduct continued, as they refused to speak to Plaintiff Levels regarding the status of her leave without her having an attorney present (Plaintiff was unrepresented at the time).

73.    On or about January 25, 2023, Plaintiff Levels received a Notice of Intended Termination of Employment letter from Sharon Landers. A true and correct copy of the Notice of Intended Termination of Employment is attached hereto as **Exhibit H**.

74.    On or about January 26, 2023, Plaintiff Levels received a box at her mailing address which contained a copy of the Notice of Intended Termination of Employment letter. The letter detailed numerous false accusations against Plaintiff Levels, including that the reasoning for Plaintiff Level's termination was due to recommendations from an audit report, Defendant's approach to anti-bullying policy, dishonesty, Plaintiff Levels's job performance and the like. All reasons were pretextual.

75.    On or about February 9, 2023, Plaintiff Levels submitted a written grievance with Defendant, constituting a grievance pursuant to Division III, Section IV of the Administrative Code, relating to the decision to terminate Plaintiff Level's employment. The grievance detailed the discrimination and retaliatory conduct that Plaintiff suffered at the hands of Defendant.

76.    Plaintiff Levels appeared at a grievance meeting on March 17, 2023, with Executive Officer Phil Fine and Arthur Hartinger, a Partner with the Renne Public Law Group.

77.    On or about April 14, 2023, Plaintiff Levels received a letter notifying her of her termination of employment effective immediately. The termination letter further indicated that Plaintiff Levels'ss grievance was denied. A true and correct copy is attached hereto as **Exhibit I**.

**C.    Discriminatory and Hostile Workplace Towards Minorities**

78.    Throughout Plaintiffs' time there, BAAQMD has been  a discriminatory and hostile workplace in which heterosexual, white men are in charge, while all others are deprived of equal opportunities and treatment.

79.    Plaintiffs experienced and observed outrageous acts of discrimination, harassment and hostility at BAAQMD. After raising such concerns with upper management, Plaintiffs' concerns were not only dismissed – Plaintiffs were fired in retaliation.

80.    Plaintiffs are the victims of discrimination and retaliatory termination because of their status as whistleblowers, and both experienced and observed numerous instances of discrimination at BAAQMD. A few examples of discrimination in which Plaintiffs were the direct victims or witnesses include, but are not limited to, the following:

    a.    ack Broadbent enforced a gendered dress code (*i.e.,* required people who identified as men to wear suits and those who identified as women to dress in attire worn by feminine presenting individuals) for individuals who sought to be promoted into management at BAAQMD.

    b.    Jack Broadbent, Director of Information Systems and Services John Chiladakis, and other white, heterosexual officers falsely accused Plaintiff Sanders of performance problems and the inappropriate staffing of positions.

    c.    Plaintiff Sanders was reprimanded for an outdoor team retreat activity with the Human Resources Director and her staff upon Plaintiff's return from a medical and administrative leave of absence, yet white, heterosexual men who participated in similar retreats prior were not reprimanded for doing substantially the same thing.

d. The position of Acting Executive Officer was assigned to a heterosexual white man, despite Plaintiff Sanders and people of color being more qualified for the position.

e. Jack Broadbent asked Plaintiff Sanders whether a photo on Facebook of his son and another male looked as if they were "gay boyfriends."

f. Jack Broadbent mocked the facial hair of a Jewish, LGBTQIA+ Board member, stating that she looked like "Hitler."

g. General Counsel Brian Bunger publicly called Plaintiff Sanders "too sensitive" and complained to Jack Broadbent in response to Plaintiff Sanders taking the time to read a non-disclosure agreement rather than merely signing it (at Mr. Bunger's insistence).

h. Plaintiffs were denied proper *Skelly* Hearings by Defendant, in accordance with state law.

i. White, heterosexual executives and officers excluded Plaintiffs and other LGBTQIA+ individuals and women of color from meetings directly related to their roles (preventing Plaintiff from receiving critical pertinent information directly related to performing their job).

j. Jack Broadbent, Director of Information Systems and Services Mr. John Chiladakis, and other white, heterosexual male officers falsely accused Plaintiff Sanders of performance problems (with no evidentiary bases).

k. White, heterosexual, male officers exhibited extreme hostility towards Plaintiffs and other non-white, non-heterosexual people of color, women and LGBTQIA+ individuals, including screaming, slamming items on desks, throwing items, and the like.

l. Jack Broadbent made jokes repeatedly about women on calls, including stating that various women "screwed that up."

m. Executives assigned Plaintiffs' job duties and their areas of expertise to heterosexual men (despite their lack of expertise), and paid them at a higher salary.

n. An African American female security officer was called a "black b****" by a white, heterosexual executive. The white, heterosexual male executive was allowed to retire rather than being immediately terminated.

o. An Asian, heterosexual male grabbed a woman of color by her wrist when she attempted to leave their conversation, forcing her to stay.

p. A Board Member stated (in reference to the Engineering Department, comprised mostly of people of Asian descent) that "you should just lock them in a room until they do their work."

q. Jack Broadbent stated that a female executive looked like a "stuffed sausage" in her outfits.

r. Jack Broadbent stated that two African American employees are "so articulate" in a surprised manner.

s. Jack Broadbent regularly stated that his former Latina officer Manager was "coquettish."

t. Jack Broadbent, stated to a female employee that (in reference to women crying in front of him), "this is how women manipulate men."

u. A female employee complained to upper management about the aggression of the white, heterosexual men in the office, to which Jack Broadbent responded that she needed to "wear her big girl panties."

v. Jack Broadbent, asked Plaintiff Sanders to "slow roll" a babies-at-work policy which a female director proposed when she was pregnant.

w. Chief Financial Officer ("CFO") Jeffrey McKay, stated that a female contractor at BAAQMD had "torpedo t******" in reference to the shape of her breasts. Subsequent to this comment, Jack Broadbent repeatedly referred to this contractor by the above derogatory term.

x. Interim Executive Officer Sharon Landers called multiple women of Asian descent by the wrong names in several meetings, whilst never misstating the names of their white counterparts.

y. The Board of Directors forcibly removed a black male community member from a meeting chamber for making a public comment and later apologized for the incident.

z.  Officers of the Board of Directors allowed an internal, white, heterosexual man to apply for the position of District General Counsel, despite him missing the publicly announced application deadline. The white, heterosexual man chosen for the position of District General Counsel was selected over candidates of color who timely applied for the position and went through the standard application process.

aa. Plaintiffs, women of color, and other LGBTQIA+ individuals were routinely silenced by heterosexual men in group settings (*i.e.,* Jeffrey McKay holding his hand up in a meeting to a woman of color to signal her to stop speaking).

bb. Executives made false and tortious statements suggesting that Plaintiff Levels inappropriately "shredded documents" while helping to clean a former employee's officed at the direction of her then supervisor, Plaintiff Sanders.

cc. District General Counsel falsely accused Plaintiff Levels of inappropriately handling an investigation while working with a third-party counsel.

dd. Officer Wayne Kino made comments about Plaintiff Level's hair and facial features, such as "Can I borrow your hair for Halloween?" and "Can I borrow your wig? Hey mole-y, how did you make your hair grow overnight?" (Mr. Kino wore faux mole stickers to the office to mock and harass Plaintiff Levels).

ee. After Plaintiff Sanders received and forwarded numerous complaints of racist behaviors by Karen Mitchoff at BAAQMD to Alexander Crockett and John Bauters, Ms. Mitchoff resigned from her position as Chair of the Board, but remained on the Board of Directors without reprimand or reprisal for her discriminatory behaviors.

**D.    Third-Party Consultant Investigation and Evaluation**

81.    At the encouragement of Plaintif Sanders, Plaintiff Levels and their colleagues, Defendant hired a third-party consultant, Illumyx, to assist with employee engagement and organizational development plans due to the low morale at BAAQMD. During Illumyx's evaluation of BAAQMD, Illumyx expressed concerns about discrimination and retaliation to BAAQMD executives, including Jack Broadbent, Cindy Chavez, John Bauters, Belmont City Councilmember and then Board Officer Davina Hurt, and then Contra Costa County Supervisor and Board Chair Karen Mitchoff. A

true and correct copy of Illumyx's 2020 Culture and Engagement Survey ("the Report") is attached hereto as **Exhibit J**.

82.     Illumyx found many troubling findings, as detailed in the Report. For example, Illumyx found that "The subtheme of conflict arose as a significant opportunity throughout the organization. Low scores in this category indicate a high likelihood that conflicts aren't fully resolved and likely persist, which can reinforce silos and exacerbate a reactive environment. A failure to build capabilities in this area may erode the organization's strengths over time." See the Report at pp. 4. Illuymyx found that "…there is a perceived lack of fairness regarding how leaders hold individuals accountable for their performance as well as how consistently policies (*e.g.*, hiring practices) are applied across the Air District. It appears leaders at all levels do not have a common understanding of how their behavior and practice impact employee engagement, which indicates a need for greater clarity on the disposition of policies and alignment on the expression of organizational values across the organization." *Id.*

83.     In response to the survey question, "I feel as if race, national origin, ethnicity, gender, gender identity, gender expression, sexual orientation, age or disability status affect promotional opportunities at the agency," 84 comments were provided in response. Of the 84 comments, the topic of racial bias was mentioned in over thirty-four percent of comments, followed by gender bias, which was mentioned in over twenty-five percent of comments. *Id.* at pp. 43.

84.     Illumyx attempted to enact a culture initiative, which the leadership at BAAQMD attempted to halt at all costs. Illumyx was concerned about the culture at BAAQMD, and informed Jack Broadbent of. John Chiladakis's attempts at interfering with Illumyx's culture initiative during Plaintiff Sanders's medical leave of absence. A true and correct copy of Illumyx's letter to Officer Jack Broadbent is attached hereto as **Exhibit K**.

85.     After the unfruitful communication between Illumyx and Jack Broadbent, Illumyx again reached out to Board of Director Chairperson Cindy Chavez after observing Defendant's board meeting on September 15, 2021. A true and correct copy of the letter to Cindy Chavez ("Cindy Chavez Letter") is attached hereto as **Exhibit L**. Illumyx stated, *inter alia*, "After watching your board meeting on Wednesday, September 15, we do not think the Board was given a clear and complete picture of the Air District's Culture Initiative. We believe we are ethically and contractually bound to give you a clearer,

more complete picture to ensure the Air District's Culture Initiative has the best chance for success…
Unfortunately, there has been a concerted effort over the past several months to derail the Culture
Initiative by some in leadership in order to keep certain aspects of the Air District's culture hidden and
unhindered by any possible change efforts. We brought this development to Jack Broadbent's
attention... We would like to have a deeper discussion with you about the Culture Initiative – our
findings, recommendations, and collaborative approach for helping the Air District develop internal
culture-building capabilities for taking true action." *See* Cindy Chavez's Letter at pp. 1.

86.     After continuing to express concerns about discrimination and retaliation, Illumyx was
suddenly terminated from its contractual duties, vitiating the Culture Initiative and the only chance at
Defendant creating a safe workplace. Plaintiff Sanders was directed by Mr. Broadbent and then Acting
District Counsel, Adan Schwartz, to cease all communication with Illumyx, with no explanation as to
why. After Illumyx was "released" from its contractual duties, Levels continued to also experience,
observe, and be the target of discriminatory behavior at BAAQMD. After voicing her concerns about
discrimination on the basis of race, sex, age, sexual orientation, and gender identity to upper
management, Level's job duties were significantly reduced. Levels still continued to voice her concerns
about discrimination at BAAQMD and was ostracized by the white, heterosexual men in charge
because of her advocacy for herself and others similarly situated. Levels, similarly to Plaintiff, was
fired in retaliation.

## VI.    <u>CAUSES OF ACTION</u>

### A.    FIRST CAUSE OF ACTION BY STEPHEN SANDERS

**Discrimination Based on Sexual Orientation, Sex, and Gender Identity
– Disparate Treatment
(Cal. Gov. Code, § 12940, *et seq.*)**

87.     Plaintiff Sanders incorporates and re-alleges by reference each of the allegations from
each of the preceding paragraphs.

88.     At all relevant times, Plaintiff Sanders was an openly LGBTQIA+ employee protected
from discrimination in employment on the basis of their sexual orientation, sex, gender identity, and
disability.

89.    This action is brought pursuant to the California Fair Employment and Housing Act.

90.    At all times herein mentioned, Cal. Gov. Code §§ 12940 *et seq.* (the FEHA") were in full force and effect and were binding on Defendant. These sections required that Defendant refrain from discriminating against any employee on the basis of, among other factors, sexual orientation, sex, gender identity, and disability. Due to Defendant's disparate treatment towards Plaintiff Sanders, as alleged above, Plaintiff Sanders alleges that they were discriminated against based on their sexual orientation, sex, gender identity, and disability in violation of Cal. Gov. Code §§ 12940 *et seq.*

91.    Defendant discriminated against Plaintiff Sanders and terminated their employment because of their sexual orientation, sex, gender identity, and disability, as alleged in the above. Plaintiff Sanders's sexual orientation, sex, gender identity, and disability were substantial motivating factors for Defendant's decision to terminate their employment.

92.    As a direct, proximate, and legal result of Defendant's willful, knowing, and intentional discrimination against Plaintiff Samders in the workplace, they have suffered and continue to suffer harm, including pain, humiliation, stress, anxiety, and emotional distress, all of which are not currently ascertained, but which will be proven at trial. Because of Defendant's discrimination against Plaintiff Sanders in the workplace, Defendant failed to provide equal compensation and benefits as male, heterosexual counterparts. Plaintiff Sanders is, therefore, entitled to general and compensatory damages, including but not limited to pain and suffering, the loss of past and future salary, wages, benefits, or other privileges and conditions of employment in an amount to be proven at the time of trial.

93.    Plaintiff Sanders has also suffered and continues to suffer from humiliation, embarrassment, financial loss, and anxiety.

94.    As a result of Defendant's pattern of unlawful conduct under the FEHA, Plaintiff Sanders is entitled to recover reasonable attorneys' fees and costs pursuant to California Government Code sections, including section 12965(b).

**B.    SECOND CAUSE OF ACTION BY STEPHEN SANDERS**

### Hostile Work Environment
### (Cal Gov. Code §§ 12940, *et. seq.*)

95.    Plaintiff Sanders incorporates, by reference, their allegations from each of the preceding paragraphs.

96.    At all times relevant herein, Plaintiff Sanders was an openly LGBTQIA+ employee protected from harassment in employment on the basis of their gender identity, sexual orientation, and sex.

97.    At all times relevant herein, Defendant participated in the harassment of Plaintiff Sanders by its harassing, discriminatory and retaliatory behavior toward Plaintiff Sanders as alleged herein and/or substantially assisted, encouraged, and condoned the continued harassment toward Plaintiff Sanders, creating a hostile work environment and sanctioned and ratified the unlawful harassing conduct.

98.    Defendant subjected Plaintiff Sanders to severe and/or pervasive harassment in a hostile, abusive manner, including but not limited to, hostility aimed at Plaintiff Sanders's gender identity and sexual orientation, that a reasonable person in Plaintiff' Sanders's position would have found the environment to be hostile and abusive. The behavior was unwanted, without Plaintiff Sander's consent, objected to, and offensive to Plaintiff Sanders.

99.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff Sanders suffered and will continue to suffer economic and non-economic compensatory damages for which Defendant is liable, including but not limited to pain and suffering, and the loss of past and future salary, wages, benefits, or other privileges and conditions of employment in an amount to be proven at trial.

100.    As a result of Defendant's unlawful acts, Plaintiff  Sanders is entitled to compensatory damages, equitable relief, attorney's fees and costs.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.     THIRD CAUSE OF ACTION BY STEPHEN SANDERS**

**Failure to Prevent Discrimination and Harassment**
**(Cal. Gov. Code §§ 12940, *et. seq.*)**

101.    Plaintiff Sanders incorporates, by reference, their allegations from each of the preceding paragraphs.

102.    At all relevant times mentioned herein, Cal. Gov. Code **§§** 12940, *et. seq.* was in full force and effect and binding upon Defendant and their employees. Section 12940(k) provides that it is an unlawful employment practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination…from occurring."

103.    Through its acts and omissions, Defendant failed in their affirmative duty to take all reasonable steps necessary to prevent discrimination on the basis of sexual orientation, sex, gender identity, and/or disability and harassment based on race from occurring in violation of Cal. Gov. Code **§** 12940(k).

104.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff Sanders suffered and will continue to suffer economic and non-economic compensatory damages for which Defendant is liable, including but not limited to pain and suffering, the loss of past and future salary, wages, benefits, and other privileges and conditions of employment in an amount to be proven at trial.

105.    As a result of Defendant's unlawful acts, Plaintiff Sanders is entitled to compensatory damages, equitable relief, attorney's fees, and costs.

**D.     FOURTH CAUSE OF ACTION BY STEPHEN SANDERS**

**Retaliation in Violation of FEHA**
**(Cal. Gov. Code §§ 12940, *et. seq.*)**

106.    Plaintiff Sanders incorporates, by reference, their allegations from each of the preceding paragraphs.

107.    At all times alleged herein, Cal. Gov. Code **§** 12940(h) was in full effect and binding on Defendant.

108.    Pursuant to Cal. Gov. Code § 12940(h), Plaintiff Sanders had a legal right to protest harassment and/or discrimination in the workplace, without retaliation from Defendant.

109.    As a result of Plaintiff Sanders's protest and opposition to the unlawful conduct of employees of Defendant, Plaintiff Sanders was retaliated against by Defendant.

110.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff Sanders suffered and will continue to suffer economic and non-economic compensatory damages for which Defendant is liable, including but not limited to pain and suffering, and the loss of past and future salary, wages, benefits, or other privileges and conditions of employment in an amount to be proven at trial.

111.    As a result of Defendant's unlawful act, Plaintiff Sanders is entitled to compensatory damages, equitable relief, attorney's fees, and costs.

### E.    FIFTH CAUSE OF ACTION BY STEPHEN SANDERS

**Retaliation**
**(Title VII of the Civil Rights Act – 42 U.S.C. § 2000e-3(a))**
**(Against Bay Area Air Quality Management District)**

112.    Plaintiff Sanders incorporates, by reference, their allegations from each of the preceding paragraphs.

113.    This claim is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a). Plaintiff Sanders opposed and reported unlawful employment practices, including discrimination based on sexual orientation, sex, gender identity, and disability in the workplace. Defendant and its agents engaged in a retaliatory course of conduct, essentially depriving Plaintiff Sanders of resources, terminating Plaintiff Sanders's employment, because they opposed and reported the unlawful employment practices alleged herein.

114.    Plaintiff Sanders complained to Defendant regarding discrimination on numerous occasions, and was dismissed at every attempt of resolution.

115.    This conduct falls squarely within the scope of conduct made unlawful by Title VII of the Civil Rights Act of 1964 and Plaintiff Sanders had a reasonable and good faith belief that Defendant's practices were unlawful.

116.    As a direct and proximate result of the foregoing unlawful employment practices, Plaintiff Sanders has been damaged, and continues to be damaged, in an amount to be proven at trial, which includes, but is without limitation to, loss of earnings and benefits, damage from loss of compensation, attorneys' fees and costs and nonpecuniary losses including emotional pain, suffering, inconvenience, and mental anguish.

## F.    SIXTH CAUSE OF ACTION BY TERRI LEVELS

### Discrimination Based on Race, Sex,Gender and Age – Disparate Treatment
### (Cal. Gov. Code, § 12940, et seq.)

117.    Plaintiff Levels incorporates and re-alleges by reference each of the allegations from each of the preceding paragraphs.

118.    At all relevant times, Plaintiff Levels was an African-American female employee protected from discrimination in employment on the basis of her race, sex,gender and age.

119.    This action is brought pursuant to the California Fair Employment and Housing Act.

120.    At all times herein mentioned, California Government Code sections 12940, et seq. (the FEHA") were in full force and effect and were binding on Defendant. These sections required that Defendant refrain from discriminating against any employee on the basis of, among other factors, race, gender and sex. Due to Defendant's disparate treatment towards Plaintiff Levels, as alleged above, Plaintiff Levels alleges that she was discriminated against based on her race, gender and sex in violation of California Government Code sections 12940, *et seq.*

121.    Defendant discriminated against Plaintiff Levels and terminated her employment because of her race, gender and sex, as alleged in the facts above. Plaintiff Levels's race, gender,sex and age, were substantial motivating factors for Defendant's decision to terminate her employment.

122.    As a direct, proximate, and legal result of Defendant's willful, knowing, and intentional discrimination against Plaintiff Levels in the workplace, she has suffered and continues to suffer harm, including pain, humiliation, stress, anxiety, and emotional distress, all of which are not currently ascertained, but which will be proven at trial. Because of Defendant's discrimination against Plaintiff Levels in the workplace, Defendant failed to provide equal compensation and benefits as male and/or white, heterosexual counterparts. Plaintiff Levels is, therefore, entitled to general and compensatory damages, including but not limited to pain and suffering, the loss of past and future salary, wages,

benefits, or other privileges and conditions of employment in an amount to be proven at the time of trial.

123.    Plaintiff Levels has also suffered and continues to suffer from humiliation, embarrassment, financial loss, and anxiety.

124.    As a result of Defendant's pattern of unlawful conduct under the FEHA, Plaintiff Levels is entitled to recover reasonable attorneys' fees and costs pursuant to California Government Code sections, including section 12965(b).

G.    **SEVENTH CAUSE OF ACTION BY TERRI LEVELS**

**Sexual Harassment – Hostile Work Environment**
**(Cal Gov. Code §§ 12940, et. Seq.)**

125.    Plaintiff Levels incorporates, by reference, her allegations from each of the preceding paragraphs.

126.    At all times relevant herein, Plaintiff Levels was a female employee protected from harassment in employment on the basis of her gender and sex.

127.    At all times relevant herein, Defendant participated in the harassment of Plaintiff Levels by its harassing, discriminatory and retaliatory behavior toward Plaintiff Levels as alleged herein and/or substantially assisted, encouraged, and condoned the continued harassment toward Plaintiff Levels, creating a hostile work environment and sanctioned and ratified the unlawful harassing conduct.

128.    Defendant subjected Plaintiff Levels to severe and/or pervasive harassment in a sexual manner that a reasonable woman in Plaintiff Levels's position would have found to be hostile and abusive. The behavior was unwanted, without Plaintiff Levels's consent, objected to, and offensive to Plaintiff Levels.

129.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff Levels suffered and will continue to suffer economic and non-economic compensatory damages for which Defendant is liable, including but not limited to pain and suffering, and the loss of past and future

salary, wages, benefits, or other privileges and conditions of employment in an amount to be proven at trial.

130.    As a result of Defendant's unlawful acts, Plaintiff Levels is entitled to compensatory damages, equitable relief, attorney's fees and costs.

### H.    EIGHTH CAUSE OF ACTION BY TERRI LEVELS

#### Failure to Prevent Discrimination and Harassment
#### (Cal. Gov. Code §§ 12940, et. seq.)

131.    Plaintiff Levels incorporates, by reference, her allegations from each of the preceding paragraphs.

132.    At all relevant times mentioned herein, California Government Code §§ 12940, *et. seq.* was in full force and effect and binding upon Defendant and its. Section 12940(k) provides that it is an unlawful employment practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination…from occurring."

133.    Through its acts and omissions, Defendant failed in their affirmative duty to take all reasonable steps necessary to prevent discrimination on the basis of race, sex, gender, age and/or disability and harassment based on sex and gender from occurring in violation of California Government Code § 12940(k).

134.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff Levels suffered and will continue to suffer economic and non-economic compensatory damages for which Defendant is liable, including but not limited to pain and suffering, the loss of past and future salary, wages, benefits, and other privileges and conditions of employment in an amount to be proven at trial.

135.    As a result of Defendant's unlawful acts, Plaintiff Levels is entitled to compensatory damages, equitable relief, attorney's fees, and costs.

**I.      NINTH CAUSE OF ACTION BY TERRI LEVELS**

**Retaliation in Violation of FEHA**
**(Cal. Gov. Code §§ 12940, et. seq.)**

136.     Plaintiff Levels incorporates, by reference, her allegations from each of the preceding paragraphs.

137.     At all times alleged herein, Cal. Gov. Code **§** 12940(h) was in full effect and binding on Defendant.

138.     Pursuant to Cal. Gov. Code § 12940(h), Plaintiff Levels had a legal right to protest harassment and/or discrimination in the workplace, without retaliation from Defendant.

139.     As a result of Plaintiff Levels's protest and opposition to the unlawful conduct of employees of Defendant, Plaintiff Levels was retaliated against by Defendant.

140.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff Levels suffered and will continue to suffer economic and non-economic compensatory damages for which Defendant is liable, including but not limited to pain and suffering, and the loss of past and future salary, wages, benefits, or other privileges and conditions of employment in an amount to be proven at trial.

141.     As a result of Defendant's unlawful acts, Plaintiff Levels is entitled to compensatory damages, equitable relief, attorney's fees, and costs.

**J.      TENTH CAUSE OF ACTION BY TERRI LEVELS**

**Retaliation**
**(Title VII of the Civil Rights Act – 42 U.S.C. § 2000e-3(a))**

142.     Plaintiff Levels incorporates, by reference, her allegations from each of the preceding paragraphs.

143.     This claim is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a). Plaintiff Levels opposed and reported unlawful employment practices, including discrimination based on race, sex, gender, and age in the workplace. Defendant and its agents engaged in a retaliatory course of conduct, essentially depriving Plaintiff Levels of resources, terminating

Plaintiff Levels's employment, because she opposed and reported the unlawful employment practices alleged herein.

144.    Plaintiff Levels complained to Defendant regarding discrimination on numerous occasions, and was dismissed at every attempt of resolution.

145.    This conduct falls squarely within the scope of conduct made unlawful by Title VII of the Civil Rights Act of 1964 and Plaintiff had a reasonable and good faith belief that Defendant's practices were unlawful.

146.    As a direct and proximate result of the foregoing unlawful employment practices, Plaintiff Levels has been damaged, and continues to be damaged, in an amount to be proven at trial, which includes, but is without limitation to, loss of earnings and benefits, damage from loss of compensation, attorneys' fees and costs and nonpecuniary losses including emotional pain, suffering, inconvenience, and mental anguish.

## VII.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as to all of the claims for relief as follows:

1.    For special, compensatory, consequential and incident damages (including past and future lost wages, lost compensation, equity, employee benefits, liquidated damages, and all other sums of money, together with interest on these amounts at prevailing rates and according to proof) in an amount to be proven at trial;

2.    For general damages, including mental pain, anguish, and emotional distress in an amount to be proven at trial;

3.    For prejudgment interest;

4.    For attorney's fees and costs of suit allowed by law, including pursuant to 42 U.S.C. § 2000e-5(k), and California Government Code § 12965(b);

5.    For equitable relief;

6.    For declaratory and injunctive relief, as follows:

a. A declaratory Judgment that Defendants have violated Plaintiff's rights as guaranteed by the California Fair Employment and Housing Act ("FEHA"), Government Code Section 12940, et seq., the California Constitution Article 1 Section 8, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, et seq, in committing the acts and in engaging in the conduct complained of herein; and

b. A permanent injunction against Defendants, their agents, successors, and employees, and those acting in concert with them, prohibiting them from engaging in each of the unlawful practices and policies complained of herein and ordering Defendants to remedy the discriminatory effects of the past and to eliminate like discrimination in the future; and

7.    An order that BAAQMD immediately refrain from spoliation, destruction, and/or significant alteration of evidence in the subject litigation and/or restore any such evidence already so spoiled, destroyed, and/or altered;

8.    An order to ensure that BAAQMD complies with the injunction provisions of any decree that the Court orders;

9.    An order retaining jurisdiction over this action to ensure that BAAQMD complies with such a decree;

10.    For reasonable attorneys' fees and costs of suit herein incurred and;

11.    For such other and further relief as the Court deems proper.

Dated: December 19, 2024                                    Respectfully submitted,

                                                            STEVEN WILLIAMS LAW, P.C.

                                                            *Steven Williams*

                                                            Steven N. Williams

                                                            **STEVEN WILLIAMS LAW, P.C.**
                                                            201 Spear Street, 1100
                                                            San Francisco, CA 94105
                                                            Telephone: 415-697-1509
                                                            Fax: 415-230-5310
                                                            Email: swilliams@stevenwilliamslaw.com
                                                            Attorneys for Plaintiffs