UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN (REX) SANDERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BAY AREA AIR QUALITY MANAGEMENT DISTRICT,<br><br>Defendant. | Case No.  23-cv-04416-RFL<br><br>**ORDER REGARDING MOTIONS IN LIMINE AND PRETRIAL MATTERS**<br><br>Re: Dkt. Nos. 196, 202–07, 209–12, 215–34, 236–37 |

## I.    PLAINTIFFS' MOTIONS IN LIMINE

**MIL No. 1 re Hearsay in Expert Reports**.  Granted in part and denied in part. Regarding Ms. Silva's reliance on statements of other witnesses, she is precluded from offering statements of witnesses that have not already been introduced in the trial, other than the statements of Plaintiffs, unless those statements are first discussed out of the presence of the jury. Even assuming those statements are commonly relied upon by HR practices experts, recounting hearsay statements from percipient witnesses is likely not to be helpful to the jury and is likely more prejudicial than probative under Rule 403.

The remainder of Plaintiffs' motion is denied.  Regarding Dr. Strassberg's use of Sanders's medical records, some portions would be within Rule 803(4)'s hearsay exception, and some other portions might be helpful information for the jury of the type that a medical expert would reasonably rely upon and could independently analyze within Rule 703.  It is impossible to assess this motion on a pretrial basis without greater specificity regarding the portions requested to be precluded.

1

Regarding Ms. Silva's analysis of the Audit report, the report is non-hearsay admitted for the effect on the listener:  that is, the decisionmakers who decided to terminate Plaintiffs.  If Plaintiffs wish to propose a limiting instruction, they may meet and confer with Defendant and propose one at least one court day before it is to be read.  There may be portions of the report that are more prejudicial than probative under Rule 403, but Plaintiffs do not specify which portions are being challenged on that basis.

Regarding Ms. Silva's reference to the notices of Plaintiffs' intended termination, those are non-hearsay verbal acts and also within Rule 803(3)'s hearsay exception for statements of then-existing intention.  The termination notices are important evidence of the District's stated basis for terminating Plaintiffs and are not properly precluded under Rule 403.

The parties shall meet and confer about any specific portions of the medical records and Audit report that Plaintiffs believe should be redacted under Rule 403 or as inadmissible hearsay, and raise any disputes with the Court via a joint filing setting forth their respective positions submitted by February 10, 2026.

**MIL No. 2 re** ▮▮▮▮▮▮▮▮▮▮  Granted.  As Defendant concedes, references to Sanders's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are properly precluded.  That has no relevance to the case.  As to Sanders's statements to Dr. Hirchak that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is of very limited probative value.  Sanders has already admitted in deposition that he had multiple co-stressors, including his father's death from COVID, his move, and family stressors.  Sanders may be asked generally

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ that could open the door to this topic.  If Defendant believes that has occurred, it must first raise the issue out of the presence of the jury before asking questions or introducing evidence on the topic.

**MIL No. 3 re Text Messages**: Denied as insufficiently specific. Plaintiffs do not identify which text messages are challenged or provide any information about them. The parties shall meet and confer about the specific text messages to which Plaintiff objects, and shall raise any disputes with the Court via a joint filing setting forth their respective positions submitted by February 10, 2026.

**MIL No. 4 re Bachmann Litigation**: Granted in part and denied in part. Defendant may introduce evidence that Sanders and Levels knew that the District had been sued for destroying documents that were alleged to have been required to be kept under the law, and that Sanders and Levels nonetheless shredded documents without inventorying them after the suit. That information is relevant because the District cites the shredding incident as a legitimate non-discriminatory reason for their termination. At the pretrial conference, Plaintiffs argued that they were not in fact legally required to inventory or prohibited from shredding the documents. Regardless, though, that evidence is probative of whether (a) the District had reason to be extra-cautious about shredding documents after the lawsuit, (b) Sanders and Levels's failure to inventory and decision to shred documents was insufficiently cautious, and (c) the ultimate decisionmakers would have terminated Sanders and Levels for their actions. It is not necessary to introduce evidence of the details of the lawsuit, that it settled or for what amount, or that Sanders was a defendant in the suit, as all of that information is of minimal relevance, and is unfairly prejudicial because it suggests wrongdoing by Sanders as to the complained-of actions, which are undisputedly irrelevant to his termination, and is a waste of time.

**MIL No. 5 re Internal Grievance Procedures and DFEH/EEOC Investigation**: Denied as to the internal grievance procedure. Plaintiffs' decision not to pursue an appeal is highly pertinent to mitigation for the reasons identified in *Rosenfeld v. Abraham Joshua Heschel Day Sch., Inc.*, 226 Cal. App. 4th 886, 901 (2014). At the pretrial conference, Plaintiffs' counsel argued that the avoidable consequences doctrine described by *Rosenfeld* was limited to cases where "no tangible employment action" was taken, pointing to language in *State Dep't of Health Servs. v. Superior Ct.*, 31 Cal. 4th 1026, 1035 (2003). However, that language did not purport to

limit the avoidable consequences doctrine to cases without a tangible employment action but instead provided that the doctrine applies equally to such situations. Indeed, *State Dep't of Health Servs.* involved a constructive termination. *Id*. at 1035. Accordingly, the Court declines to limit the avoidable consequences doctrine to cases where no tangible employment action was taken. Granted as to the DFEH/EEOC investigation, because Plaintiffs' decision to seek relief from the court rather than the administrative agencies is not relevant to mitigation and has nothing to do with the adequacy of Defendant's investigation into Plaintiffs' allegations.

**MIL No. 6 re Alleged Shredding of Documents in Broadbent's Office**: Denied. As noted above re MIL No. 4, the alleged incident is directly relevant to the District's asserted non-discriminatory reason for termination, and thus its probative value outweighs the danger of unfair prejudice.

**MIL No. 7 re Undisclosed Witnesses**: Denied as to Hopkins and Larson, who were both disclosed. If Plaintiffs believed the disclosure was insufficiently specific, they should have moved to compel discovery at an earlier juncture. Denied as to Hinojosa, because his role was disclosed when Defendant stated he was the "person most knowledgeable" about these topics prior to the close of discovery, so the failure to disclose was harmless. However, like any witness, Hinojosa may testify only to events within his personal knowledge. Granted as to Baker. There is no evidence that Baker was ever disclosed, and Levels's personal friendship with Baker and Baker's role as the current HR Director is insufficient to disclose that the District believed she had knowledge about information relevant to this litigation. Accordingly, the failure to disclose was not harmless. Granted as to Hope Cahan. (*See* Dkt. No. 247.) Defendant does not demonstrate cause for their late disclosure. This belated disclosure was not harmless because Plaintiffs did not have an opportunity to depose her, as they did not know that Defendant intended to rely on her testimony.

**MIL No. 8 re Reasons for Termination of Illumyx Project**: Granted in part and denied in part. Defendant may introduce evidence of the reasons for its termination of the project and may rely on independent sources, including statements made to Broadbent by other staff.

Defendant, however, may not rely on the document over which it has claimed attorney-client privilege (Attachment 33 to the Van Dermyden Makus Investigation Report) or any other information in that document for which there was no independent source, because Plaintiffs have been denied discovery into those topics.  MIL No. 8 also appears to seek discovery of that document, but Plaintiffs does not provide good cause under Rule 16 for this late motion to compel discovery beyond the discovery cut-off, so that request is denied.

**MIL No. 9 re Defendant's Economic Expert Kaycea Campbell**:  Denied.  Plaintiffs do not challenge Campbell's qualifications or the reliability of her testimony under Rule 702, but instead challenge her use of the date of Plaintiffs' withdrawal from the internal grievance appeals process as a cut-off for damages on the basis that this is a legal conclusion.  However, Campbell may properly testify that, in her opinion, the EDD's requirements for unemployment claims are relevant in order to assess whether damages had been mitigated, and that those requirements involve pursuit of the appeals.  Campbell need not be an HR expert to state that, from an economic perspective, the EDD's guidance is probative of the industry standard, and may then provide the jury with a damages calculation based on applying the EDD's standard.  That is not a legal conclusion.  Plaintiffs may cross-examine to discern whether pursuing an appeal was reasonably likely to mitigate their damages in the circumstances.

**MIL No. 10 re Testimony re Investigation's Conclusions and Witness Statements from Investigation**:  Plaintiffs stated at the hearing that they do not intend to argue that Defendant failed to prevent discrimination based on the inadequacy of Defendant's investigations conducted by Van Dermyden Makus.  Instead, presumably, Plaintiffs intend to argue that Defendant failed to prevent discrimination based on other acts, such as Broadbent's failure to address Levels's complaints that Chiladakis was discriminating against her or the District's lack of investigation following Sanders's complaints to Chavez.  Given Plaintiffs' statement that they will not base their failure to prevent claim on the inadequacy of the Van Dermyden Makus investigation, testimony about the investigation has limited relevance and is precluded under Rule 403.  Allowing investigators to testify as to their conclusions and hearsay

statements of non-witnesses who cannot be cross-examined raises a significant danger of unfair prejudice that would outweigh any probative value. If Plaintiffs do nonetheless introduce testimony or evidence challenging the adequacy of the Van Dermyden Makus investigation, that would likely open the door to additional information about the investigation, including its details. In that circumstance, Defendant may raise the issue to allow this motion to be re-addressed outside the presence of the jury.

**Plaintiffs' Motion to Preclude Affirmative Defenses Based on Discovery**. Granted in part and denied in part. This appears to be a motion in limine that was included in the pretrial conference statement. Granted as to the after-acquired evidence defense. Defendant failed to disclose the information on which they intend to rely regarding the alleged "misappropriation of confidential employer files" in response to interrogatories requiring disclosure of evidence in support of their affirmative defenses, which would include the after-acquired evidence defense. Defendant's failure to disclose was not harmless because even though Plaintiffs produced a document supporting the defense, they had no notice that Defendant would argue the defense based on that document or that Defendant would call witnesses to say that misappropriation of such files would have been a basis for termination. Accordingly, under Federal Rule of Civil Procedure 37(c), Defendant is precluded from raising the after-acquired evidence defense. The Court will not instruct the jury on this defense.

As to the remaining affirmative defenses, the parties should be forewarned that the Court generally has a strict view of the prohibition on introducing any document or witness not disclosed in discovery. However, where the disclosure has been made but was not sufficiently clear or was missing details, it is the receiving party's obligation to move to compel to obtain additional clarity or detail. Defendant's disclosure of its remaining witnesses at issue falls in the latter category rather than the former. Also, there is no apparent prejudice from Defendant's failure to specify the topics on which those individuals would be testifying, as it appears to be no mystery.

6

## II.    DEFENDANT'S MOTIONS IN LIMINE

**Motion to Exceed Limit on MILs**:  Granted based on the number of potentially inflammatory incidents in the evidence.

**MIL No. 1 re Other Incidents**:  Granted in part and denied in part.  Plaintiffs may introduce evidence of Chiladakis's bias concerning the protected categories because that is relevant to the discrimination claims and his reasons for allegedly interfering with the audit findings.

Plaintiffs may also introduce evidence of Broadbent's bias concerning the protected categories (including but not limited to failing to address others' discrimination in those categories and informing Chiladakis about Levels's complaints about him) because Broadbent allegedly participated in the decisions to replace Sanders with Chiladakis and to shut down Levels's project with Illumyx, both of which are adverse actions at issue.  Even if some of the comments Broadbent is alleged to have made may not be very probative of Broadbent's potential gender bias in isolation, the comments are probative of such bias in the aggregate.

Plaintiffs may introduce evidence of the alleged racist, sexist, and homophobic incidents that Sanders discussed in his conversation with Cindy Chavez in August 2021, because those reports are the alleged reason for the retaliation against him.

Levels may introduce evidence that Landers repeatedly used the wrong names for Asian and black women employees but did not commit the same errors as to white employees.  The evidence is not relevant as to Sanders, despite the fact that Landers was the decisionmaker in his termination, because Sanders is white.  However, the parties' submissions regarding Fine's deposition are sufficient to allow a reasonable jury to infer that Landers was a significant participant in the decision to terminate Levels. (Dkt. Nos. 260, 261.)  Fine stated that he took "advice" from others about that decision, including "obviously, Sharon Landers, who had written the intent to terminate." (Dkt. No. 261-1 ("Fine Dep.") at 51:13–52:4.)  Indeed, Fine identified Landers as the only non-attorney with whom he had consulted, other than Chiladakis. (*Id.* at 52:5–14.)  As such, evidence that Landers repeatedly used wrong names for non-white female

employees is probative of whether Landers harbored discriminatory animus against Levels. *Martin v. Bd. of Trs. of Cal. State Univ.*, 97 Cal. App. 5th 149, 169 (2023) (a "cat's paw" theory imposes liability when a "significant participant in an employment decision exhibited discriminatory animus" (citation omitted)).

Sanders's reprimand in connection with the Oakland Zoo activity is pertinent to his retaliation claim, which encompasses a broader scope of adverse actions than his discrimination claim and requires the jury to consider whether a pattern of antagonism existed toward Sanders.

For the above items, the probative value is high and outweighs the danger of unfair prejudice, though Defendant may still object at trial under Rule 403 if the evidence becomes cumulative or excessively prejudicial. Accordingly, MIL No. 1 is denied in large part, as to each of the above categories.

MIL No. 1 is granted under Rule 403 as to the remainder of the items, which are (a) the hiring of Alexander Crockett over other candidates who fell in the protected categories, without any evidence about the relative qualifications of the various candidates; and (b) unrelated biased acts of other individuals who were not involved in the decisions concerning the adverse actions alleged. Although some of these incidents could be pertinent to the failure to prevent claim in order to show Defendant's repeated inaction in the face of discrimination, their probative value is low, given the other information already deemed admissible. Also, this evidence is likely to be highly time-consuming and is more unfairly prejudicial than probative.

**MIL No. 2 re Sanders's Notes**: Granted in part and denied in part. Granted for notes pertaining to conversations/statements that were recorded or taped. Where there is no dispute about what was said, Sanders's notes have minimal additional probative value and are cumulative under Rule 403. In the event that information comes out at trial that provides a basis to dispute the accuracy of the recordings, Plaintiffs may ask the Court to reconsider its ruling to allow the notes to be admitted.

For conversations that were not recorded, Sanders may read his notes into evidence as a recorded recollection, though they may not be introduced as an exhibit, as provided in Rule

803(5).  Notes made four days later may be deemed to have been made while the matter was fresh in Sanders's memory under Rule 803(5).  Notes about what Sanders planned to say in a meeting are also admissible under Rule 803(5) as his recorded recollection of what he *planned* to say.  Those notes are not direct evidence of what he actually said.  However, assuming Sanders testifies that he recalled making statements consistent with his preexisting plan, Sanders's planned statement is relevant circumstantial evidence as to what he actually said.  Accordingly, the evidence is more probative than unfairly prejudicial.  Before introducing the statement, Sanders's counsel must first lay a foundation that Sanders followed his plan about what he was going to say, at least as to the portion sought to be admitted.  That is necessary to establish relevance.  If that foundation is not adequately laid, Defendant may renew its objection.

**MIL No. 3 re Illumyx**:  This motion is directed both at the contents of the report and the circumstances of the termination of the contract.

As to the contents of the report, the motion is granted in part and denied in part.  It is relevant that the report raised issues about a culture of discrimination and retaliation, because that shows the District's notice as to the failure to protect claim and Chiladakis's alleged discriminatory intent as evidenced by his termination of the project.  The use of the report for these purposes is non-hearsay because it is introduced not for the truth of the report's content but for the effect on the listener (that is, the District or Chiladakis).  However, the specific methodology used and evidence gathered by Illumyx, including the specific individual survey results and anonymous comments, are of limited relevance because they do not pertain to the incidents at issue in this case.  As such, they are more unfairly prejudicial than probative under Rule 403.  Accordingly, Plaintiffs may introduce evidence of the report's initial findings and topic, but not the survey results or anonymous comments.  The parties shall meet and confer regarding redactions to the report, and shall raise any disputes with the Court via a joint filing setting forth their respective positions submitted by February 10, 2026.  During trial, if Defendant questions the accuracy and fairness of the report's overall initial findings about discrimination, that would likely open the door to the unredacted report, accompanied by a

9

limiting instruction if Defendant wishes.  For example, if Defendant puts in evidence that the report was not acted upon, the relevance of that evidence would be to call into question whether the report's findings were sufficiently reliable to be taken seriously, hence opening the door.  If Plaintiffs believe the door has been opened, Plaintiffs shall raise the issue outside the presence of the jury before introducing such evidence.

As to circumstances in which the contract was terminated, the motion is denied.  Ending the contract was allegedly an adverse action against Levels for purposes of her discrimination and retaliation claims.  Though Defendant contends that the project was a minor component of Levels's job based on the description, the cited description does not establish that, and it is a jury question how significant the project was.  Moreover, the termination of the contract also pertains to Chiladakis's alleged discriminatory intent.

**MIL No. 4 re Bauters's Appearance on *The Snake***:  Granted.  Participation on a game show that involves deception is not probative of one's "character for truthfulness" when testifying under oath under Rule 608(b).  Also, the evidence is excluded as more unfairly prejudicial than probative and a waste of time under Rule 403.  After reviewing the video clips submitted by Plaintiff, Bauters's statements about the use of dirty tricks or confusion in politics have limited probative value, given that they were made in the context of a game show and concerned Bauters's anticipated performance on the show.

**MIL No. 5 re Accusations Against Landers from Her Prior Employment**:  Granted under Rule 403.  It would consume undue time to provide the evidence for the jury to assess whether Defendant adequately investigated the anonymous complaints at issue, and doing so would raise the danger of unfair prejudice due to the anonymous, secondhand nature of the information.  At the same time, the information is of limited probative value in light of its anonymous nature.  At the hearing, Plaintiffs' counsel raised the possibility that Landers believed Plaintiffs to be authors of an anonymous report detailing the complaints at issue and retaliated against them as a result.  Even if Plaintiffs could show that there was a basis for thinking that Landers believed they authored such a report, Plaintiffs did not plead a retaliation

claim on this basis in their consolidated complaint, and the deadline to amend their complaint has long since passed.  They may not raise this previously undisclosed claim on the eve of trial after discovery has closed.

**MIL No. 6 re Kino**:  Granted under Rule 403.  This highly inflammatory evidence has limited relevance in light of the other more relevant evidence of the workplace culture that has already been found admissible in the above ruling on MIL No. 1.  As to notice to the District, it does not appear that the District was notified of these incidents until after Sanders was terminated, Kino had retired, and this litigation had begun.  Accordingly, it is of limited relevance, at best, to the failure to prevent claim.

**MIL No. 7 re Mitchoff**:  Granted under Rule 403.  Mitchoff was not involved in Levels's termination.  Although she was one of nineteen board members who voted to start the audit that led to Sanders's termination after he raised concerns about race and sex discrimination to another board member, there is no evidence that she was the swing vote or influenced the decision.  Accordingly, evidence concerning her alleged discriminatory intent is of limited probative value, if any, and is more unfairly prejudicial than probative.

**MIL No. 8 re Other Settlements**:  Granted in part and denied in part.  Rule 408 does not bar the introduction of evidence regarding settlements to show knowledge.  The settlement regarding Breen described in MIL No. 18 is admissible for the reasons explained below.  MIL No. 8 is denied as to that settlement.  However, MIL No. 8 is granted as to settlement of other suits.  Plaintiff's opposition alludes to lawsuits involving Broadbent and Kino, but Kino was not a decisionmaker for Sanders and Levels's terminations, and Plaintiffs' counsel conceded at the hearing that there was no such settlement as to Broadbent.  There is no proffer of any suits that are similar to this case or that involve Sanders and Levels's supervisors.  Settlements of suits involving other unrelated individuals are of limited relevance, and the risk of undue prejudice and needless consumption of time outweighs the probative value under Rule 403.

**MIL No. 9 re Conduct of Counsel**:  Denied, as this is not an evidentiary issue.  However, neither side's counsel shall accuse opposing counsel of misconduct in front of the jury.

11

**MIL No. 10 re Dismissed Claims**:  Denied, as insufficiently specific as to what evidence is at issue.  Plaintiffs have agreed not to submit evidence that pertains only to dismissed claims.

**MIL No. 11 re Removal of Community Member from Board Meeting**:  Granted.  The parties do not provide the date of this act, but it appears to be a significant number of "years" before the events at issue in the lawsuit and thus of very limited relevance.  As such, it is more unfairly prejudicial than probative under Rule 403.

**MIL No. 12 re Sanders's Medical Diagnoses**:  Granted in part and denied in part. Sanders may testify as to his experience of his symptoms (including sleep deprivation and physical symptoms), and what he underwent in terms of treatment (such as any programs or therapy), as those are within lay testimony.  However, he may not testify as to his diagnosis because he has not been qualified as an expert.  Relaying his doctor's diagnosis for the truth of the matter (*i.e.*, that he actually suffers the condition at issue) would be hearsay, as statements by a doctor to a patient are not within the hearsay exception of Rule 803(4) and would also be precluded.

**MIL No. 13 re Language**:  Denied.  Except for words Plaintiffs already agreed not to use ("discrimination" and "retaliation"), each of the words at issue could be used in a context that is helpful to the jury.  It is impossible to assess this motion on a pretrial basis.

**MIL No. 14 re Spoliation of Evidence**:  The only specific evidence discussed in Defendant's motion is two letters from Levels's work email to Charles Bonner.  Accordingly, that is the only issue upon which the Court will rule.  The motion is granted in part and denied in part.  Plaintiffs may present evidence that Chiladakis found or created the letters, and if that is established, may develop evidence of the associated circumstances.  Levels, however, may not speculate about how the letters were found or created, unless she has personal knowledge.

**MIL No. 15 re Video**:  Denied.  In addition to the failure to provide the video in discovery prior to the close of fact discovery, Defendant has not articulated any reason why the video is relevant.  Plaintiffs would not be allowed to play family videos to humanize themselves before the jury, even though they may discuss generally their background during their testimony.

Likewise, Defendant may not play a video whose principal purpose is to humanize the corporation, even though District witnesses may describe the work done by the District to provide general background.

**MIL No. 16 re Single Examination of Witnesses**:  Denied as moot, because the parties have agreed on the procedure.

**MIL No. 17 re "Whistleblower" in Email**:  Denied.  Redundant of MIL No. 13.  Also, Chavez's characterization of Sanders's complaint as a "whistleblower" complaint conveys information about the content of what he said to her.  It is therefore a factual statement that is helpful to the jury.  Moreover, that information has significant probative value on the contested issue of whether Sanders complained of discrimination in that conversation, and this value outweighs any unfair prejudice from the characterization.  If Defendant wishes to propose a limiting instruction, the Court will consider it, so long as Defendant meets and confers with Plaintiffs about the instruction and proposes the instruction to the Court at least one court day before it is to be read.

**MIL No. 18 re Breen's Settlement Agreement Permitting Resignation**:  Denied. Plaintiffs contend that at around the same time as the events at issue in the case, Breen had committed misconduct involving a racial slur but the District delayed its decision to terminate him and afforded him time to resign.  They claim that this shows similarly situated white heterosexual male employees were treated differently despite committing arguably more serious misconduct, and thus that the reasons for Plaintiffs' termination were pretextual.  The decision to afford Breen time to resign is therefore probative of discriminatory intent and is not more unfairly prejudicial than probative.  Moreover, the general nature of the conduct of which he was accused is pertinent to assess whether it was indeed significantly worse than what Plaintiffs were accused of.  Nor is the information barred by Rule 408, since the purpose is not to prove whether the allegations against Breen were true but whether Defendant had a discriminatory intent in terminating Plaintiffs.  As discussed at the pretrial conference, any argument, evidence, or testimony regarding Breen's resignation should not identify the specific racial slur he is alleged

13

to have used but should instead refer to it generally as a racial slur.  Identifying the specific racial slur is of limited probative value and would be more unfairly prejudicial under Rule 403.

**MIL No. 19 re Signal Messages**:  If Plaintiffs present evidence that (a) the witnesses were aware that use of Signal would violate public records requirements when used to communicate about official acts, *and* (b) that the witnesses used Signal to communicate about topics pertinent to the lawsuit, the use of disappearing Signal messages could reasonably be inferred to reflect consciousness of guilt and a need to hide the paper trail of the acts at issue.  If that foundation is laid, the evidence is admissible.  However, absent *both* of those predicates, the evidence is more prejudicial than probative under Rule 403 and is precluded.  The motion is denied without prejudice to the objection being re-raised at trial if the foundation has not been adequately laid as described.

**MIL No. 20 re Fairness of Internal Grievance Procedures**.  Granted in part and denied in part.  Plaintiffs may not present evidence as to the procedural safeguards required by *Skelley* and whether the hearings fell short of those safeguards, as that evidence is of limited, if any, relevance and would unduly consume time.  However, Plaintiffs may present evidence of the content of what was said at the hearings.  The District's asserted reasons for termination, its willingness to truly hear Plaintiffs' objections, and its responses to those objections are highly relevant to the issues of discriminatory intent and pretext.[1]

## III.    ORDERS REGARDING WITNESSES

Except for parties, witnesses are excluded from the courtroom except when testifying.  Counsel shall inform witnesses of this order, as well as the motion in limine rulings.

---

[1] Plaintiffs' motions to strike various portions of evidence for the MILs (Dkt. Nos. 208 and 238) are denied as moot, as none of the evidence at issue is relied upon in this ruling.

## IV.    TRIAL SCHEDULE

- 2/10: File updated documents required from pretrial conference.

    o  Joint filing re disputes as to Plaintiffs' MIL No. 1, Plaintiffs' MIL No. 3, and Defendant's MIL No. 3, as described above.  Maximum length of 5 pages total for both sides, per MIL at issue.

    o  Joint timeline of events for the Court's use (and, if agreed upon, for the jury's use too), as described below.

- 2/13: The Court will post a draft of its proposed jury instructions.

- 2/17: Latest day for jury office to send the parties copies of the completed jury questionnaires (may be earlier if the jury office receives the full set earlier).

- 2/18 at 1:30 p.m. via Zoom.  Excusal hearing to discuss stipulations to excuse jurors based on questionnaires for cause, and the Court's decisions to dismiss jurors for hardship.  The Court will also rule on disputes from the 2/10 filing if necessary and hear objections regarding the proposed jury instructions.

- 2/20:  Jury selection at 8:30 a.m., counsel to arrive by 8:00 a.m. to discuss any final issues.  (Because there is another jury trial at the courthouse slated to begin on February 23, and the jury office cannot process more than one jury panel at the same time, we need to do jury selection the Friday before trial begins.)

- 2/23:  Counsel arrives 8:00 a.m. to discuss any issues and to pre-admit stipulated exhibits.  Trial begins at 8:30 a.m. with opening statements (40 min each).  Begin Plaintiffs' case.  Court finishes for the day at 1:30 p.m.  Twenty-minute breaks around 10 a.m. and 11:50 a.m.  All deadlines in the Civil Trial Standing Order regarding trial run from 2/23.

15

- 2/24 through 3/6: Counsel arrives 8:00 a.m. to discuss any issues and pre-admit stipulated exhibits.  Trial runs 8:30 a.m. to 1:30 p.m. (except on 2/24, when we will end at 1:00 p.m.).  Anticipate completing evidence on or before 3/6.

- 3/9: Dark due to the Court's unavailability.  Anticipated final jury instructions conference at 2:00 p.m., but be prepared to complete earlier if evidence finishes earlier.

- 3/10: Anticipated closing arguments (90 minutes each), but be prepared to complete earlier if evidence finishes earlier.

- Will tell jury that the trial is estimated to run through 3/13, which includes some time for deliberations, but it's up to them how long they deliberate.  We will be dark 3/16 through 3/19, if deliberations go beyond 3/13.

- Each side will have 20 hours for evidence presentation, inclusive of objections and sidebars.  This does not include time for opening statement and closing argument.

## V.    JURY SELECTION

The Court will submit the following supplemental questions for the jury questionnaire:

1. Have you or anyone close to you ever submitted (or threatened to submit) a claim of any sort against an employer, such as a lawsuit, charge of discrimination or wrongdoing, grievance, or whistleblower claim?  If so, state the approximate date, who was involved, and describe the circumstances and outcome.

2. Have you or anyone close to you ever felt bullied or discriminated against based on a personal characteristic like race, sex, age, or sexual orientation at work?  If so, state the approximate date, who was involved, and describe the circumstances and outcome.

3. Have you or anyone close to you ever been falsely accused of something while at work?  If so, state the approximate date, who was involved, and describe the circumstances and outcome, including any investigation or audit.

4. Have you or anyone close to you ever had to supervise or manage an employee who was not qualified for the job, or who exhibited poor performance?  If so, state the date, who was involved, and describe the circumstances and the experience.

5. The Defendant is a public government agency (Bay Area Air Quality Management District).  Do you harbor any particularly positive or negative feelings toward that agency, government agencies generally, or government employees that might affect your ability to judge this case fairly?  If so, please explain.

6. Do you have any personal, religious, or philosophical beliefs that might affect your ability to fairly judge a case involving an openly LGBTQIA+ individual?

7. Do you have any strong beliefs about whether discrimination based on race, sex, or sexual orientation is common in workplaces?  If so, please explain.

8. Jury selection will be held on February 20, 2026, from 8:30 a.m. to 3:00 p.m., with a one-hour lunch break.  The trial itself will begin on February 23, 2026, and the attorneys estimate that it will be done by March 13, 2026, at the latest.  The trial will be held every weekday, except March 9, 2026.  The trial day will begin at 8:30 a.m. and end at 1:30 p.m., with two twenty-minute breaks.  Do you have any serious issues that prevent you from serving as a juror in this case (such as medical or public health concerns, prepaid travel plans, financial concerns, or family responsibilities)?  Keep in mind that if you are unable to serve for this trial, you could be placed on another, longer trial in the coming months.  Yes___ No___.  If yes, please explain:

The Court will use the following case description at the in-person jury selection:

This is an employment lawsuit brought by Stephen (Rex) Sanders and Terri Levels, who both worked at the Bay Area Air Quality Management District.  Mr. Sanders served as the Chief Administrative Officer, and Ms. Levels served as the Human Resources Officer.  In 2023, the District terminated the employment of both Mr. Sanders and Ms. Levels.

Mr. Sanders alleges that the District terminated him because of his sexual orientation.  Ms. Levels alleges that the District terminated her because of her race and gender.  They also allege that they were terminated to retaliate against them for complaints that each made about alleged discrimination in the workplace environment at the District.  They are seeking damages for lost wages, lost future wages and emotional distress.

The District denies all allegations of discrimination and retaliation.  The District contends that its decisions to terminate Mr. Sanders and Ms. Levels were made in good faith and were based on legitimate, non-discriminatory, and non-retaliatory business reasons.

The jury selection process will proceed as follows:  Eight jurors will be seated.  Plaintiffs Levels and Sanders will have a total of three peremptory challenges.  Defendant will also have a total of three peremptory challenges.  Jury selection will be conducted as an 18-pack.  The Court will complete initial questioning of the first group of 18.  Each side will then have 20 minutes to voir dire that group, beginning with Plaintiffs.  Cause challenges will be discussed at sidebar, and then those jurors will be excused before peremptories.  When there are seven jurors left in the box, the jurors will be reseated, and the remaining slots will be filled from the gallery.  The Court will question the eleven new jurors, after which the parties will have each have 7 minutes for additional voir dire, before proceeding to cause and peremptory challenges.

## VI.    SEALING

Testimony concerning Sanders's medical and psychiatric records will be sealed, as well as those exhibits.  Counsel shall state which exhibits are sealed when moved into evidence.  That testimony should be consecutive and preferably occur at a break, to allow clearing of the courtroom with minimal wasted time.  If necessary, testimony of another witness may be interrupted to accommodate this, so long as the issue is raised with the Court and opposing counsel by no later than the prior court day.  Time to clear and reopen the courtroom, if not during a break, will be charged to the proponent of the evidence.

## VII.    JOINT SUBMISSION OF TIMELINE

On February 10, 2026, in order to allow the Court to rule more efficiently and effectively on evidentiary issues during trial, the parties shall file jointly a timeline of key events, including, for example, when Plaintiffs began employment with the District, Sanders's leave of absence, his conversation with Chavez, Chiladakis's start date in his role, Levels's complaint to Broadbent about Chiladakis, the provision of the Illumyx initial report, the termination of the Illumyx contract, the Board meetings in which they decided to commission the audit, the audit findings, the notice of intent to terminate, the dates of Plaintiffs' termination, etc.  If events are disputed, they may be color-coded (*e.g.*, red for Plaintiffs and blue for Defendant).  If there is no precise date for certain events (such as statements by Broadbent or Levels's exclusion from meetings),

an approximate time frame may be included.  This timeline would be for the Court's reference only.  However, the parties should consider whether a similar version might also be helpful for the jury and, if so, jointly propose one by the same date to be used at trial.

**IT IS SO ORDERED.**

Dated: February 3, 2026

_____
RITA F. LIN
United States District Judge